32231. POSTELL *v.* VAL-LITE CORPORATION *et al.*

Decided December 3, 1948.

*Herbert Johnson, Ross Arnold,* for plaintiff.

*Tindall & Tindall, J. F. Kemp,* for defendants.

SUTTON, C. J. (After stating the foregoing facts.) According to the testimony of Postell, he undertook to find a place to store the property here involved, at the request of Gene Craig, his close personal friend, in June, 1947, it being alleged in his petition

that this was on or about June 10, 1947. Thereafter, Central Transfer Company, at his request, picked up the goods and stored them. This, according to the petition, took place on June 13, 1947. Postell further testified that in March, 1948, at the insistence of Central Transfer Company, he removed the property to his premises, and paid the charges of Central Transfer Company. From the evidence, considered with the petition, it appears that all transactions which Postell had in connection with the property took place on or subsequently to June 10, 1947. "All judgments in the superior, justices', or other courts of this State shall be of equal dignity, and shall bind all the property of the defendant, both real and personal, from the date of such judgment, except as otherwise provided in this Code." Code, § 110-507. When a judgment is rendered, if the execution issuing thereon is entered upon the general execution docket in the office of the clerk of the superior court of said county within 10 days from the rendition thereof, the lien of the judgment upon the property of the defendant is binding from the time the judgment is rendered. Code, § 39-701. The judgment in favor of Neel Higgins was rendered on June 9, 1947, and the execution issued thereon was recorded in the general execution docket of Fulton County on the following day; and therefore this lien was binding on the property of the defendant from June 9, 1947. "All liens not regulated and fixed, as to their rank, in this Code, shall rank according to date, the oldest having priority." § 67-1702.

Postell contends that under the facts he has a lien on the property as a naked depositary, and therefore is entitled to be reimbursed for all charges incurred by reason of the deposit, and may retain possession of the property until these charges are paid. "The delivery of chattels by one person to another to keep for the use of the bailor is called a deposit; the depositary may undertake to keep them without reward; such undertaking is a naked deposit. If he receives or expects a reward or hire, he is then a depositary for hire." Code, § 12-301. "A naked depositary is entitled to be reimbursed all charges and expenses incurred by reason of the deposit, and may retain possession until the same are paid." § 12-307. "Pawnees, factors, bailees,

and acceptors shall have such liens as are in this Code designated. Such liens shall be inferior to liens for taxes, liens of which such person had actual notice before becoming creditors, special liens for rent, liens of laborers, liens or mortgages duly recorded, judgment liens, and other general liens reduced to execution and levied." § 12-701. "Depositaries shall have such liens as are prescribed in this Code, and shall, as to other liens, occupy the same position as mechanics. The liens mentioned in this and the preceding section shall be lost by a surrender, to the debtor, of the property on which the lien is claimed, and they shall rank with each other, and with other liens not specified in this and the preceding section, according to date." § 12-702. "Depositaries for hire shall have a lien for their hire, and may retain possession until it is paid." § 12-703. "Involuntary gratuitous or naked depositories shall have a lien on property in their possession for any expense incurred in caring for the property." Ga. L. 1947, p. 1165, Code (Ann. Supp.), § 12-711. It appears from the evidence that the property here involved was not delivered to Postell to keep for the use of the bailor, but was delivered to Central Transfer Company. Postell, at the request of his friend Craig, and as an accommodation to him, had the property in question stored with Central Transfer Company, and this concern billed Postell for its charges for storing same. The transfer company took the property with the understanding that it would store it for only a month or two, but had to keep it much longer. This company kept after Postell to have the property moved, and he repeatedly tried to get Craig to take the merchandise out of storage and pay the storage bill and he would promise to do so, but did not. Finally, on March 10, 1948, Postell paid Central Transfer Company its storage charges and had the property removed to his premises. Whatever claim Central Transfer Company may have had upon the property for storage does not appear to have been assigned to Postell in writing as provided in Code, § 67-1705. The item of $39.05 paid by Postell to C. D. Miller for repairing damaged merchandise was paid on February 21, 1948, while the property was still in the possession of the transfer company, as Postell testified that it was not moved to his place until in March. No evidence at all was offered as to

the proof of the $25 item for the time the property was shown to have been in the possession of Postell, nor as to the $20 for hauling and labor. It appears from the evidence that what the claimant did and expended in connection with this property was done for and as a personal favor for his friend Craig, and was a mere voluntary payment by Postell for Craig. Under the facts of the case and the law applicable thereto, the judge, trying the case without the intervention of a jury, was authorized to find that the judgment lien of the plaintiff in fi. fa. on the property involved was superior to the alleged lien of the claimant for the amounts expended and incurred by him in connection with the property. The trial judge did not err in overruling the claimant's motion for a new trial.

*Judgment affirmed. Felton and Parker, JJ., concur.*